UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON VRH,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. ZAMORA, et al.,<br><br>　　　　Defendants. | Case No.: 1:25-cv-01385-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS, WITHOUT LEAVE TO AMEND, FOR A FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOLLOWING SCREENING OF PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>14-Day Objection Period |

Plaintiff Aaron Vrh is appearing pro se in this civil rights action pursuant to 42 U.S.C. section 1983.

## I.　　INTRODUCTION

The Court issued its First Screening Order on January 27, 2026. (Doc. 10.) The Court found Plaintiff's operative, second amended complaint failed to state a claim upon which relief could be granted. (*Id*. at 4-16.) As a result, Plaintiff was ordered to file a third amended complaint, or, alternatively, to file a notice of voluntary dismissal, within 21 days. (*Id*. at 16-17.)

On February 24, 2026, when Plaintiff failed to file a third amended complaint or voluntary dismissal, the Court issued its Order to Show Cause (OSC) in Writing Why This Action Should Not Be Dismissed for Plaintiff's Failure to Respond to the First Screening Order. (Doc. 11.) Plaintiff was to respond within 14 days. (*Id*. at 2-3.)

On March 6, 2026, Plaintiff filed an amended complaint. (Doc. 12.)

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially

2

pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.   Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C.   Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v.*

3

*Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**IV.    DISCUSSION**

**A.  Plaintiff's Third Amended Complaint**

In the caption of the third amended complaint, Plaintiff lists "J. Zamora, et al.," the California Department of Corrections and Rehabilitation (CDCR), "Jeffery Mcomber" and V.

4

Cantu, a lieutenant at Valley State Prison, as defendants in the action. (Doc. 12 at 1.) However, in the section titled "III. Defendants," Plaintiff identifies CDCR, "Mcomber" and Cantu only, omitting any reference to J. Zamora. (*Id*. at 2-3.) For relief, Plaintiff seeks the following:

> I am requesting the Court to provide an order compelling CDCR to do an effective investigation of my claims of attempted sexual assault, and using a polygraph to find my statements reliable, [a]ll hearings and interviews be recorded audio video to assure veracity. And CDCR staff to do another RAP to consider single cell status after conducting a new effective PREA[1] investigation, and my not guilty/acted out of self defense finding. I ask the Court to [i]ssue preliminary injunction to make prison officials take immediate action to protect my health & safety in the form of single cell status while a PREA investigation is done prior to new RAP to consider plaintiff for single cell status.

(*Id*. at 15.)

### B. Plaintiff's Claims

Claim One: Factual Allegations

Plaintiff asserts an Eighth Amendment threat to safety claim, presumably against all named defendants. (Doc. 12 at 6.) Plaintiff contends Defendant Cantu failed to investigate his claims of assault. (*Id*.) He states he was arrested "and put in the hole for 6 months," losing good time credits, privileges and property. (*Id*.) Plaintiff contends exculpatory evidence—a confidential informant statement— indicates Plaintiff "'fought Soto out of self defense'" and was "excluded by CDCR staff in the packet or incident report provided to the RVR Rules Violation Officer." (*Id*.) Plaintiff alleges he has suffered a broken hand and tooth because CDCR ignored "submitted safety concerns regarding inmate Soto" prior to Soto's assault of Plaintiff. (*Id*.) Plaintiff contends he is at further risk of harm because CDCR staff, including Defendant Cantu, did not properly investigate the assault of July 3, 2024. (*Id*.) He asserts prior assaults on him were misclassified as mutual combat and he has been misquoted in reports and records by CDCR staff to "make it less likely for single cell status to be granted." (*Id*.) Plaintiff maintains that "in an unrecorded audio or video RVR hearing," he stated he qualified for single cell status, citing to "Title 15 but the Lt. wrote because I am over weight and stressed out. Adding 90 days." (*Id*.)

---

[1] A reference to the Prison Rape Elimination Act.

Next, Plaintiff contends he and "Inmate Joseph" reported Soto's threats and violent behavior, indicated Soto was "forming a racially based gang within the cell" and "wanted a all [M]exican, [S]panish speaking cell." (Doc. 12 at 7.) He alleges he and Joseph repeatedly requested to have Soto moved to another cell, but no action was taken and "all correspondence was ignored or 'redirected' to somewhere unknown then never responded to." (*Id.*) Plaintiff contends "Soto has a retirement and would buy the loyalty of the [M]exican inmates with canteen and package items. Like a gang leader." (*Id.*)

Plaintiff alleges that Soto attacked him on July 3, 2024, making "racially motivated comments" and stating Plaintiff was "outnumbered 4-1" by Mexican inmates. (Doc. 12 at 7.) Soto made remarks about Plaintiff's "charges as an excuse for the assault that was about to happen," stating "he was going to stick his hand up [Plaintiff's] ass." (*Id.*) Soto rushed Plaintiff's bunk area and began punching. (*Id.*) The other inmates did not intervene or call for help. (*Id.*) Plaintiff alleges he was trapped in a corner between a row of lockers and his bunk with no way to escape. (*Id.* at 7-8.) Soto punched Plaintiff about ten times, cracking one of Plaintiff's teeth, poking at his eyes, and scratching his face. (*Id.* at 8.) When Plaintiff tried to push Soto away, Soto broke his hand. (*Id.*) Soto then tried to push Plaintiff to the ground so Plaintiff grabbed Soto's throat, punching him "repeatedly and progressively harder until" Soto was neutralized. (*Id.*) Plaintiff states that "Soto appeared to be in a bipolar adrenalin fueled sexually motivated rage." (*Id.*) Plaintiff contends he stayed in his bunk area as Soto "banged on the cell door" and lied to officers by claiming Plaintiff assaulted him. (*Id.*) Plaintiff states he asked that video footage from the hallway be reviewed "because the video does not lie." (*Id.*) He further asserts two of the three Mexican inmates present lied by indicating Plaintiff "started the altercation of appliances" but the other inmate indicated Plaintiff was defending himself. (*Id.*)

Plaintiff contends that "[w]ithout any formal adjudication," he was "placed in the hole for six months" and his "property was taken and lost by CDCR staff." (Doc. 12 at 8.) Plaintiff lost good time credits and his "release date was moved out," package privileges were removed, and his canteen privileges were reduced. (*Id.*) Plaintiff alleges he was "facing possible charges of serious bodily injury and assault and battery" but the Madera County District Attorney's Office

did not pursue the matter. (*Id*.) Further, he maintains he was "found not guilty by CDCR staff." (*Id*.) At the hearing regarding the incident, Plaintiff alleges the exculpatory statement by one of the inmates "was missing or not provided to the hearing officer," and although the information was eventually located, Plaintiff asserts "a CDCR staff" attempted to conceal that evidence from the hearing officer. (*Id*. at 8-9.)

Next, Plaintiff alleges that on July 24, 2024, he gave a statement, but "Defendant B. Henderson and Officer Gutierrez [barely allowed]" him to do so.[2] (Doc. 12 at 9.) Henderson and Gutierrez told Plaintiff he "should accept unfair unjust treatment from inmates and staff" and laughed. (*Id*.)

Plaintiff maintains he was "more worried about the [assault] and did not [realize] just because [he] had stopped the sexual part of the [assault] from happening that it still was a sexual [assault]," only learning an attempt was still an assault when he reviewed the orientation manual while housed at Corcoran State Prison. (Doc. 12 at 9.) He then reported the attempted sexual assault, time passed, and he was not interviewed by an investigator, the PREA compliance manager, or any victim support personnel. (*Id*.) Plaintiff contends his requests were ignored until he began filing grievances. (*Id*.) He never spoke to the PREA compliance manager but was eventually interviewed by Defendant Cantu. (*Id*.) Plaintiff states that in his grievances, and verbally to Cantu, he requested a "polygraph to find [his] statements reliable as confidential informant statements were contradictive and both versions could not be true." (*Id.* at 9-10.) His requests were denied and all grievances were denied. (*Id*. at 10.)

Plaintiff alleges he has bad anxiety and has been traumatized, noting he has been assaulted "11 time in 11 years." (Doc. 10 at 10.) When the Madera County District Attorney elected not to prosecute, Plaintiff requested single cell status "through the prison here at CHCF. VSP had not done an adequate investigation. Then Corcoran prison staff denied single cell status based on that inadequate investigation" and "CHCF classification refused to address" his single cell status request because it had already been decided at Corcoran. (*Id*.) Plaintiff then filed "more

_____

[2] Neither "B. Henderson" nor "Officer Gutierrez" is named as a defendant in this action. In any event, these allegations do not state a claim.

7

grievances resulting in a RAP Reasonable [Accommodation Panel]" denying his request "based on the altercation with Soto classified as [mutual combat]. (*Id*.) Plaintiff states he again "filed for single cell status" after it was determined he "was the victim by a preponderance of evidence and acted in self defense," prompting "an ISU Investigative Services Unit officer" contacting him for an interview "where he informed [Plaintiff] that he could not do an investigation if [one] had already been done by" Defendant Cantu." (*Id*.) When the ISU office returned on February 18, 2026, Plaintiff was informed that "Cantu never performed the investigation." (*Id*.) The officer asked Plaintiff "if the attack of Soto was just for violence or sexual gratification," and when Plaintiff "stated both," the officer replied "it can only be one or the other." (*Id*.) When Plaintiff spoke to another inmate about his frustration, that inmate suggested Plaintiff "look up Soto's charges" and Plaintiff learned "Soto was convicted of GBI for popping a womans eye out," like Soto trying to poke at Plaintiff's eyes. (*Id*. at 10-11.) Plaintiff contends Soto was "convicted of criminal threats for threatening to kill her with a knife and [forcible] oral copulation," like Soto's attempt to try to force Plaintiff "to perform sexual act." (*Id*. at 11.)

Next, Plaintiff asserts he is trying to stay out of trouble so he can go home and be a father to his children and assist his elderly mother. (Doc. 12 at 11.) He maintains he could have "easily killed Soto," has "been charged with fighting multiple times for being [assaulted,] and has been threatened by an "inmate [Kyle Pranther] at SCC." (*Id*. at 11.) He contends "CDCR staff verbally" claim there is no record of the multiple assaults on him despite his refusals to return to his cell. (*Id*.) Plaintiff asserts he stayed in his cell with the door locked "about 22 hours per day only going out for exercise, law library or medical" and is "scared to be locked in a cell with a criminal." (*Id*.)

Plaintiff asserts he has "severe spine injuries" and is fully disabled. (Doc. 12 at 11.) He has sciatica in both legs and those symptoms in both arms. (*Id*.) He contends inmates see him "as an easy mark or prey because" he uses a walker and moves "like a 90 year old." (*Id*.) He maintains that a December 17, 2024, classification falsely claimed Plaintiff requested a single cell "for medical not safety reasons." (*Id*.) Plaintiff contends "CDCR staff and investigators" have failed to fairly investigate the assault and to protect him "from reported threats of violence and

8

gang tactics." (*Id.*) He maintains he continues to suffer and faces "further punishment and danger of [assault]." (*Id.*)

Plaintiff identifies his injuries as a broken tooth, broken hand, bruises and scratches, being "[p]unished for being victimized," and the loss of good time credits and privileges. (Doc. 12 at 6.) He also states he is being "further punished for being traumatized so refusing a cellmate because no single cell status due to CDCR staff inaction." (*Id.*)

Claim One: Applicable Legal Standards

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted).

To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*,

511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

<u>Claim One: Analysis</u>

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a cognizable claim against any named Defendant.

First, as previously determined, CDCR is entitled to Eleventh Amendment immunity and thus is not a proper defendant in the action. (*See* Doc. 10 at 9 ["Plaintiff's section 1983 claim against CDCR is barred by the Eleventh Amendment"], 15 ["Plaintiff may not bring a section 1983 claim against CDCR …"].)

Second, Plaintiff fails to assert a cognizable claim against Defendant Macomber (or "Mcomber"), CDCR Secretary, because he alleges no facts concerning Macomber. Plaintiff fails to assert either personal participation or implementation of any deficient policy by Defendant Macomber. *Waggy*, 594 F.3d at 713; *Redman*, 942 F.2d at 1446; *Taylor*, 880 F.2d at 1045; *Ivey*, 673 F.3d at 268. Nor can the undersigned find that Plaintiff would be able to do so in good faith were he granted further leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

Third, Plaintiff fails to assert a cognizable claim against Defendant Cantu. As pled, Defendant Cantu's only involvement concerns his investigation of Plaintiff's claim of an attempted sexual assault by inmate Soto. No facts are asserted to suggest Cantu failed to protect Plaintiff from Soto at some earlier point. While the Court recognizes Plaintiff's allegations that he and another inmate "submitted safety concerns" about Soto, reported Soto's threats and violent behavior, and repeatedly asked that Soto be moved to another cell, Plaintiff does not allege those concerns, reports, and/or requests were directed to *Cantu*. Vague references to "CDCR" ignoring Plaintiff's concerns about Soto do not establish that Cantu failed to protect Plaintiff. *See Gibson*

10

*v. City of Portland*, 165 F.4th 1265, 1287-90 (9th Cir. 2026) (simply grouping some or all defendants and ascribing to them generalized assertions of overall conduct is insufficient).

Here, Plaintiff alleges only that Cantu failed to fully or adequately investigate his claim after the fact. However, those facts do not state a claim upon which relief can be granted. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved"); *Ogunrinu v. Cty. of Riverside*, 79 Fed. Appx. 961, 963 (9th Cir. 2003) ("[Plaintiff] has not identified a recognized constitutional right to which he can anchor his [inadequate investigation] claim. Rather, he vaguely asserts that failing to investigate was part of a larger conspiracy to deprive him of his civil rights," citing *Gomez*); *Hasha v. Gamboa*, No. 1:24-cv-00744-SAB (PC), 2025 WL 553049, at *3 (E.D. Cal. Feb. 19, 2025) ("Plaintiff claims that defendants failed to investigate and failed to properly investigate her claims of alleged sexual assault by inmate Penn. However, such claims do not provide a basis for a plausible § 1983 claim. To the extent plaintiff is trying to hold defendants liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim," citing *Gomez*); *see also Pickett v. Williams*, 498 Fed. Appx. 699, 700 (9th Cir. 2012) ("[T]here is no constitutional right to request an investigation or receive administrative review of prison disciplinary proceedings"). Stated another way, because Plaintiff fails to state a claim against Cantu for a failure to protect ("another recognized constitutional right"), Plaintiff's claim that Cantu failed to fully or adequately investigate the incident also fails to state a claim upon which relief can be granted because it is independent and unspecified.

Finally, to the extent Plaintiff intended to assert his Eighth Amendment threat to safety/failure protect claim against any other individual (*e.g.*, "J. Zamora" or any other "CDCR staff") he fails to do so. Zamora is not identified in Claim One of the third amended complaint, and no facts are alleged as to Zamora in Claim One. Further, vague references to "CDCR staff" are insufficient. *Gibson,*165 F.4th at 1288 ("It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the

11

facts"); *Leer*, 844 F.2d at 633.

In sum, the undersigned concludes that granting further leave to amend would be futile.

<u>Claim Two: Factual Allegations</u>

In Claim Two, Plaintiff asserts a state law negligence claim against "J. Zamora, CDCR, Cory Martinek" and Does 1 through 8, and alleges the acts or omissions giving rise to the claim occurred on "September 16th 2024 to present" at "California State Prison Corcoran" and at "CHCF. (Doc. 12 at 12.)

<u>Claim Two: Applicable Legal Standards</u>

To state a negligence claim, "the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." *Thomas v. Stenberg*, 206 Cal.App.4th 654, 662 (2012). Whether a defendant owes a duty of care in a particular case is a question of law resolved by the court. *Centinela Freeman Emergency Med. Assocs. v. Health Net of Cal., Inc.*, 1 Cal.5th 994, 1012 (2016); *see McCurry v. Singh*, 104 Cal.App.5th 1170, 1175 (2024) (duty to be determined by court on "case-by-case basis"). "'Duty' is merely a conclusory expression used when the sum total of policy considerations lead a court to say that the particular plaintiff is entitled to protection." *Armato v. Baden*, 71 Cal.App.4th 885, 893 (1999). In determining whether a duty exists under California law, courts are to weigh, among other things, foreseeability of the harm to the plaintiff, the nexus between a defendants conduct and plaintiff's injury, and "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach." *Id*. at 893-94 (quoting *White v. Southern Cal. Edison Co.*, 25 Cal.App.4th 442, 447 (1994)).

In general, a party is under no duty to control the conduct of another. *Tarasoff v. Regents of Univ. of Cal*., 17 Cal.3d 425, 435 (1976). An exception to this general rule may exist where the defendant is in a "special relationship" with either the injured plaintiff or a third party whose conduct created the harm that injured the plaintiff. *Id.* at 436 (citing Rest. 2d Torts, sec. 315). California recognizes that "jailers owe prisoners a duty of care to protect them from foreseeable harm." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal.App.4th 231, 252 (2008).

12

To bring a tort claim under California law, a plaintiff must also allege compliance with the California Government Claims Act ("Act"). Under the Act, a plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Govt. Code §§ 905, 911.2(a), 945.4 & 950.2; *see Klein v. City of Laguna Beach*, 533 Fed. Appx. 772, 774 (9th Cir. 2013) (dismissing claims for failure to comply with the California Government Claims Act). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1240 (2004).

Claim Two: Analysis

Initially, the undersigned notes Plaintiff's state law negligence claim in the operative complaint is largely unchanged from the version appearing in his original complaint. (*Cf*. Doc. 1 at 8-10 to Doc. 12 at 12-13.) The difference is the addition of a single page that begins with a partial paragraph (presumably paragraph 9) and is summarized below.

Plaintiff alleges Defendants breached of duty "by ignoring multiple [assaults], mishandling required accommodation procedures, mislabeling incidents to deny [him] protection, interfering with [his] ability to [pursue] relief, and refusing to even hear [his] safety concerns. Defendants failed to act reasonably and violated their duty to protect" Plaintiff from known risks. (Doc. 12 at 14.)  Plaintiff reiterates his assertion that he was the victim and there was no mutual combat. (*Id*.) He contends the incidents at "San Quentin, High Desert, Jamestown, Valley State Prison and California Health Care Facility shows a pattern where [he] was not just in 'mutual combat' but repeatedly victimized, multiple times in cell." (*Id*.) He asserts he has demonstrated "a pattern of misclassification and mishandling designed to avoid CDCR's duty … to provide reasonable safety through single cell housing." (*Id*.)

First, Plaintiff has failed to allege compliance with the California Government Claims Act. Because Plaintiff's third amended complaint is deficient for the same reasons as those articulated in the Court's original screening order (*see* Doc. 10 at 14-15) and because Plaintiff has failed to remedy those deficiencies, the Court assesses that Plaintiff cannot cure his pleadings

13

and, thus, that leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief).

Second, as noted above, Cory Martinuk is not named as a defendant in Plaintiff's third amended complaint.

Third, Plaintiff also failed to cure the deficiencies identified in the original screening order as concerns any state law claim against any Doe defendant. As previously explained, "it is unclear how any Doe defendant violated" Plaintiff's rights because Plaintiff did "not identify what action or non-action taken by each Doe defendant is involved in the purported deprivation," and did not Plaintiff "list the Doe Defendants involved and described what each person did to violate his rights," as directed by the Court. (*See* Doc. 10 at 10-11 & 15.) Therefore, the undersigned concludes Plaintiff cannot cure his pleading and further leave to amend would be futile. *Hartman*, 707 F.3d at 1129-30.

Additionally, as concerns Defendant Zamora, Plaintiff generally contends Zamora "wrongfully screened, addressed, and denied" his request for single cell status. (Doc. 12 at 12.) But because Zamora was not required to grant Plaintiff single cell status but only to consider Plaintiff's request (*see* Doc. 10 at 13-14 [finding Title 15 of the California Code of Regulations section 3269 "does not require single cell status be afforded even if victimization has been documented]), Plaintiff cannot establish a breach of duty by Zamora. *Thomas*, 206 Cal.App.4th at 662; *Centinela Freeman Emergency Med. Assocs.*, 1 Cal.5th at 1012; *McCurry*, 104 Cal.App.5th at 1175. Thus, Plaintiff fails to state a cognizable negligence claim and granting further leave to amend would be futile. *Hartman*, 707 F.3d at 1129-30.

Finally, pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The

14

Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966). Here, because Plaintiff's third amended complaint fails to state any cognizable federal claims, the undersigned would alternatively recommend that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law negligence claim.

## V.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court **HEREBY RECOMMENDS** that Plaintiff's third amended complaint be dismissed, without leave to amend, for a failure to state a claim upon which relief can be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 30, 2026**    _____
UNITED STATES MAGISTRATE JUDGE