UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

AARON VRH,

Plaintiff,

v.

J. ZAMORA, et al.,

Defendants.

Case No.: 1:25-cv-01385-JLT-CDB

**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING OF PLAINTIFF'S FOURTH AMENDED COMPLAINT**

(Doc. 21)

**ORDER DIRECTING CLERK OF THE COURT TO MODIFY THE DOCKET**

14-Day Objection Period

Plaintiff Aaron Vrh is appearing pro se in this civil rights action pursuant to 42 U.S.C. section 1983.

Defendants removed the action from state court to this Court on Plaintiff's second amended complaint. *See* (Doc. 1.) This Court issued its first screening order on January 27, 2026, finding Plaintiff failed to state any cognizable claims. (Doc. 10.) Plaintiff responded to the screening order by filing a third amended complaint. (Doc. 12.) Following screening of the third amended complaint, the undersigned issued findings and recommendations to dismiss without leave to amend. (Doc. 16.) Upon review of Plaintiff's objections thereto (Doc. 17), the undersigned vacated the findings and recommendations and granted Plaintiff leave to file a fourth amended complaint. (Doc. 18.) Plaintiff's fourth amended complaint is screened hereby.

**I. SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**II. PLEADING REQUIREMENTS**

**A. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B. Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**C. Supervisory Liability**

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934

(9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## III. DISCUSSION

### A. Plaintiff's Fourth Amended Complaint

Plaintiff names the California Department of Corrections and Rehabilitation (CDCR), Lieutenants V. Cantu and C. Zoucha, "OOG Office of Grievances Officer" L. Sasselli, and Sergeant Gamboa at Valley State Prison (VSP) as defendants in this action. (Doc. 21 at 1-2, 4.)

He seeks injunctive relief: (1) a "competent adequate PREA investigation" concerning the July 3, 2024, altercation between he and inmate Soto, including the "use of polygraph to find statements reliable as contradictive statements can't both be true;" (2) that the results of the investigation be "made available and a new RAP Classification hearing for single cell status happen with those case factors considered;" (3) permanent single cell status; and (4) "a temporary injunction of ruling single cell status [until] the PREA investigation" concerning the prior July 2024 incident is conducted and considered by RAP Classification. (*Id*. at 6.)

**B. The Factual Allegations**

Plaintiff asserts he has "a history of in cell abuse and multiple assaults" by other inmates during his 11 years of incarceration. (Doc. 21 at 3.) He states he has been physically assaulted 11 times and threatened with sexual assault twice. (Id.) On one occasion, his hand was broken and a tooth was cracked and ultimately lost. (*Id*.) Plaintiff asserts he is "100% disabled due to severe spine injuries" and he uses a walker, moving "about like [he is] 90 and not the 60" years old that he is. (*Id*.) His disability makes him a target for abuse in the prison system "as creepy inmates" see Plaintiff "as a target for easy abuse or prey they can take advantage of." (*Id*.)

Next, Plaintiff alleges that in an 8-man cell at VSP, he and inmate Joseph reported that inmate Jesus Octavio Soto was trying to form an in-cell Mexican gang and wanted all Mexican, Spanish speaking inmates assigned to the cell. (Doc. 21 at 3, 7.) This report was made to Defendants Zoucha, Sasselli, and Gamboa verbally and in writing. (*Id*.) Plaintiff asserts Soto's actions "resulted in an authoritarian hostile gang environment" because "violent, hostile, verbally abusive, gang control tactics were being used." (*Id*. at 7.) Plaintiff asserts "they would gang up and lie to officers" about Plaintiff and inmate Joseph. (*Id*.) Plaintiff alleges Soto was the instigator and he and Joseph made multiple requests to have Soto moved to another cell. (*Id*.) Plaintiff contends that the "defendants above" were deliberately indifferent to his safety concerns and that all correspondence was "ignored or 'redirected' to somewhere unknown" without response. (*Id*.)

Plaintiff alleges that for some period of time, "other [Hispanic] inmates moved on their own accord or went home and the cell became calmer to a certain extent." (Doc. 21 at 7.) As more Hispanic inmates were assigned to the cell, Plaintiff alleges he and Joseph "requested a

racially balanced cell and expressed safety concerns," including the potential for "gang tactics, threats and violence." (*Id.*) Next, Plaintiff alleges: "What is not in the documents is the fact that Soto has a retirement and would buy the loyalty of the [Mexican] inmates with canteen or package items. Like a gang leader." (*Id.*) About a week or two before July 2024, "CDCR staff" moved two more Mexican inmates into the 8-man cell and "the trouble started back up." (*Id.*)

On July 3, 2024, inmate Soto attacked Plaintiff. (Doc. 21 at 7.) Soto made racially motivated comments, stating Plaintiff was "outnumbered 4-1." (Id.) Plaintiff alleges Soto "had an antenna plugged into [Plaintiff's extension] cord in [Plaintiff's area and Plaintiff's]" TV was plugged into Soto's extension cord in Plaintiff's area. (Id.) When Soto suddenly yanked on his extension cord, Plaintiff's TV was damaged. (Id.) Plaintiff then unplugged Soto's antenna and handed it back to him at his bunk. (Id.) "Meanwhile Soto was making remarks" about Plaintiff's "charges as an excuse" for the impending assault. (Id.) When Soto said he was going to stick his hand up Plaintiff's ass, one of the other inmates asked if Soto was "really going to do that." (Id.) Soto replied, "well something is going up there" and rushed Plaintiff's bunk area and began punching him. (Id.) The other inmates were "complaisant" and did not defend Plaintiff or seek help from correctional officers. (Id.)

Further, Plaintiff alleges he was trapped in the corner between a row of 6-foot lockers and his bunk. (Doc. 21 at 7-8.) He had no way to escape and given the cell's location officers would not hear Plaintiff if he yelled. (*Id.* at 8.) Plaintiff asserts Soto punched him about 10 times, cracking his tooth. Soto was trying to poke Plaintiff's eyes out and was scratching his face. (*Id.*) When Plaintiff tried to push Soto out of the area by holding the upper bunk with one hand and pushing out with the other, Soto hit Plaintiff's hand on the bunk and broke it. (*Id.*) Plaintiff alleges that Soto tried to push him to the ground to sexually assault him, stating Plaintiff was "'going down'" and "'this is happening.'" (*Id.*) Plaintiff then grabbed Soto by the throat, punching Soto "repeatedly and progressively harder" until Soto was neutralized. (*Id.*) Plaintiff states that "Soto appeared to be in a bipolar adrenalin fueled sexually motivated rage," that Plaintiff had to strike Soto very hard to stop the assault, and that he did not pursue Soto after pushing Soto out of his bunk area. (*Id.*)

Next, Plaintiff alleges he stayed in his bunk area while Soto banged on the cell door, lying to responding officers by indicating Plaintiff had assaulted him. (Doc. 21 at 8.) Plaintiff asserts he asked that video footage from a hallway camera be viewed "because the video does not lie." (*Id.*) Plaintiff then states he hit Soto so hard Soto's eye socket was broken. (*Id.*) He further asserts two of the three Mexican inmates lied, indicating Plaintiff started the altercation "over appliances that were on the other side of the lockers so could not see anything." (*Id.*) Another inmate stated Plaintiff was defending himself. (*Id.*) Plaintiff alleges that "[w]ithout formal adjudication," he was placed in the "hole" for 6 months; his property was taken and then lost, he lost good time credits and his release date was extended, and his package privileges were revoked and canteen privileges were reduced. (*Id.*) As the victim of a violent attempted assault, Plaintiff was being punished for defending himself and facing possible charges of serious bodily injury and assault and battery. (*Id.*) He was allowed only one phone call a week. (*Id.*) Plaintiff alleges he has suffered serious damages "due to CDCR staff's deliberate indifference" to his reported safety concerns. (*Id.*) Ultimately, the Merced County District Attorney "decided not to pick up the charges" and Plaintiff was found not guilty in the prison proceedings. (*Id.*) He further asserts that during the hearing "it was found that CDCR staff had done confidential witness statements about an altercation that did not address the attempted sexual assault." (*Id.*) Plaintiff maintains one informant's statement – that Plaintiff fought with Soto in self-defense – "was missing or not provided to the hearing officer" and that a later "second set of witness statements" were obtained, "narrowing the questioning" to only whether an altercation occurred," resulting in all witnesses responding affirmatively. (*Id.* at 8-9.) Plaintiff alleges that when he showed the hearing officer the original set of witness statements, the hearing officer "appeared to think" Plaintiff had fabricated the earlier statements but eventually located them on the computer. (*Id.* at 9.) He asserts "a CDCR staff had tried to hide, conceal or omit exculpatory evidence from the file" provided to the hearing officer. (*Id.*)

Next, Plaintiff asserts he was unable to give a statement until July 24, 2024, 21 days after he was assaulted. (Doc. 21 at 9.) He alleges "Defendant B. Henderson and Officer Gutierrez

[barely] allowed" him to make a statement.[1] (*Id.*) When Plaintiff told Officer Gutierrez that Soto "had formed a racially based [Mexican] gang" in the cell they shared, Gutierrez told Plaintiff he was being racist and that he should know how politics work, suggesting that Plaintiff "should accept unfair unjust treatment from inmates and staff." (*Id.*) He contends Henderson laughed. (*Id.*) Plaintiff states that at that time he was "more worried" about the assault and did not realize that because he "had stopped the sexual part" of the assault "that it still was a sexual assault." (*Id.*) Only when he arrived at Corcoran state prison and was given an orientation manual did he understand that "an attempted sexual assault was still a sexual assault;" he then reported the attempted sexual assault. (*Id.*) Plaintiff alleges that a lot of time passed and he was not interviewed by an investigator, the PREA compliance manager or a victim's advocate or support person. (*Id.*) He asserts his requests were ignored until he began filing grievances. (*Id.*) Plaintiff alleges he was never able to talk to the PREA compliance manager. (*Id.*) Further, he asserts that the "King County Action Organization" did not provide an advocate support person and instead referred him to "Madera Action" who only ever provided a letter. (*Id.*) Eventually Plaintiff was interviewed by Defendant Cantu about the sexual assault. (*Id.*) He maintains that "Warden D. Bailey claimed in writing that Cantu was going to do an investigation." (*Id.*) Plaintiff asked Cantu "to have a polygraph" to confirm the reliability of Plaintiff's statement given the contradictory statements by confidential witnesses. (*Id.* at 9-10.) He filed a grievance requesting the same. (*Id.*) Plaintiff alleges all grievances and requests were denied "by CDCR Office Of Appeals defendants Howard E. Mosely, A Delgado"[2] and that multiple grievances concerned his request for single cell status. (*Id.* at 10.)

Plaintiff alleges he has "bad anxiety" and was traumatized by Soto's assault and notes that no one stepped in to stop Soto or to stop Plaintiff from being assaulted "11 time in 11 years." (Doc. 21 at 10.) Plaintiff contends he filed an action in the Madera County Superior Court seeking injunctive relief regarding the "use of a polygraph as outlined in Title 15 for investigative

---

[1] Neither "B. Henderson" nor "Officer Gutierrez" is named as a defendant in this action.

[2] Neither Moseley nor Delgado is named as a defendant in this action.

purposes" and another action seeking injunctive relief in Kings County Superior Court to obtain single cell status. (*Id.*)

Next, Plaintiff alleges that when he was found not guilty following the disciplinary proceedings, he "rerequest[ed] single cell status" at the California Health Care Facility (CHCF). (Doc. 21 at 10.) He states VSP did not do an adequate investigation, that Corcoran denied single cell status "based on that inadequate investigation," and that CHCF then refused to address his request because Corcoran had already decided it. (*Id.*) Following more grievances, a Reasonable Accommodation Panel (RAP) denied his request for single status "based on the altercation with Soto classified as Mutual Combat" rather than Plaintiff having been a victim. (*Id.*) Plaintiff maintains that when he was found not guilty and that he "was the victim by a preponderance of evidence and acted in self defense it was no longer mutual combat." (*Id.*) When Plaintiff again sought single cell status as a victim of sexual harassment and an attempted sexual assault, an Investigative Services Unit (ISU) was triggered. (*Id.*) When Plaintiff was contacted by the ISU officer for an interview, the officer informed Plaintiff that he could not do an investigation because Defendant Cantu had already done one. (*Id.*) On February 18, 2024, the ISU officer returned and informed Plaintiff that Cantu "never performed an investigation." (*Id.*) Plaintiff alleges that the officer repeatedly asked him a question and "then said 'soo' then stating [something] different than" Plaintiff had just stated. (*Id.*) The officer also asked Plaintiff if "the attack of Soto was just for violence or for sexual gratification." (*Id.*) When Plaintiff replied it was both, the officer replied that it "can only be one or the other." (*Id.*) When Plaintiff expressed his frustration to another inmate, that inmate suggested Plaintiff "look up Soto's charges." (*Id.* at 10-11.) Plaintiff learned Soto had been charged with great bodily injury "for popping a [woman's] eye out," similar to Soto's attempt to poke Plaintiff's eyes. (*Id.* at 11.) Soto was convicted of "criminal threats for trying to kill her with a knife and [forcible] oral copulation," similar to Soto's attempt to force Plaintiff to perform a sexual act. (*Id.*)

Plaintiff alleges he is "traumatized by all this" and is trying to stay out of trouble so that he can go home to be a father to his kids and assist his elderly mother. (Doc. 21 at 11.) He states he "could have easily killed Soto" and could "have been charged with fighting multiple times for

being" assaulted. (*Id*.) He states he was assaulted in his cell multiple times and was threatened with sexual assault "by another inmate at SCC" but CDCR staff told him there was no record of it. (*Id*.) Plaintiff asserts he stays in his cell with the door locked about 22 hours a day, only leaving for exercise, the law library or medical. (*Id*.) He further asserts he is "being punished for being" traumatized and is "scared to be locked in a cell with a criminal." (*Id*.) In addition to his spinal disability, Plaintiff has sciatica in both legs and symptoms in both arms. (*Id*.) He repeats that he is "an easy mark or prey" for other inmates because he uses a walker and moves slowly as a result. (*Id*.) Plaintiff asserts that on December 17, 2024, "classification" falsely claimed Plaintiff sought single cell status "for medical not safety reasons." (*Id*.)

Plaintiff contends "CDCR staff and investigators" had a duty to "fairly investigate" his sexual assault allegations "even when disputed." (Doc. 21 at 11.) He asserts "CDCR breached this duty by failing to properly investigate" and for "misclassifying this and multiple other incidences." (*Id*.) "CDCR staff had a duty to protect" Plaintiff from reported threats and gang tactics and breached that duty by ignoring the reported threats, racially motivated threats, violence and gang activity. (*Id*.) Plaintiff continues to suffer and faces "further punishment and danger of [assault]." (*Id*.) He alleges Defendants Gamboa, Sasselli, and Zoucha ignored he and inmate Joseph Neale's requests to have Soto moved to another cell due to their safety concerns. (*Id*. at 12.) They failed to protect Plaintiff and were deliberately indifferent to the requests to move Soto and their failure resulted in Soto assaulting Plaintiff. (*Id*.)

Next, Plaintiff alleges that being "dorm approved and double cell cleared" put him at further risk of assault, sexual assault, or being placed into other situations where he will be required to defend himself. (Doc. 21 at 12.) He could be forced to move into a dorm setting or could face an unreasonable risk of harm from a cellmate. (*Id*.) Although a classification committee considers factors like "physical ability, past abuse, medical issues, [assaults and sexual assaults] when considering single cell status," when Defendant Cantu failed to investigate Plaintiff's PREA allegation, he realized that "Corcoran and CHCF classification could not consider the case factor that Soto tried to sexually assault" him. (*Id*.) This makes Plaintiff "at greater risk of future harm." (*Id*.) He states that "CHCF and VSP have a high percentage of

weirdo sex offenders," noting an inmate was recently assaulted on the patio of an adjacent building and that his last cellmate was an "MS-13 Gang member here on charges related to a gang rape." (*Id.*)

Plaintiff contends he can establish "prison officials knew of the substantial risk of harm through [verifiable] documents and disregarded an excessive risk of harm by ignoring those documents. (Doc. 21 at 13.) CDCR officials' "deliberate indifference to the [submitted] documents show a deliberate indifference to threats and acts of violence and/or unnecessary and wanton infliction of pain with a culpable state of mind," resulting in Plaintiff being attacked and harmed by Soto. (*Id.*) Plaintiff states: "Now just how the inactions of ISU … Lt. V. Cantu's failure to investigate my PREA … claim is a continuation of this same failure is not so obvious because his inaction results in other prison officials not being able to act accordingly to prevent further substantial risk of harm." (*Id.*) Plaintiff alleges he spent two years believing prison officials ignored the fact he was sexually assaulted only to learn in February 2026 that Defendant Cantu never "did the PREA investigation he was assigned." (*Id.*) Cantu's failure to investigate means classification "can't even see" that case factor. (*Id.*) Cantu's failure "through linkage and causation" puts Plaintiff at substantial risk of future harm. (*Id.* at 13-14.)

Plaintiff alleges the failure to investigate "started at Corcoran where it was not addressed effectively" and Plaintiff suspects "VSP staff" incorrectly labeled him "the suspect and [his] attacker the victim." (Doc. 21 at 14.) He asserts it was "redirected back to VSP" for Cantu to investigate. And when Plaintiff "tried to readdress the PREA claim" at CHCF, it was "again redirected back to VSP where [his] request was [rejected.]" (*Id.*)

Next, Plaintiff argues that while an inadequate investigation does not state a claim "unless there was another recognized constitutional complaint," because the PREA investigation was inadequate it meant there was "no report for the Classification Committee to consider as a case factor," placing Plaintiff at substantial risk of future harm. (Doc. 21 at 14.) He asserts that action "qualifies for the 'exception' to the general rule that no party is in no duty to control the conduct of another because the [defendants] have a 'special relationship' with both plaintiff and a third party whose conduct injured the plaintiff. And that special relationship continues in this [action.]

It is ongoing and the defendant CDCR is in continual duty of care to protect the plaintiff from foreseeable harm." (*Id.*) Plaintiff states these circumstances "sure feels cruel and unusual" and "would never happen out on the street with a real police investigator. And if it is not then it should be a civil rights violation." (*Id.*) He states he has "learned PREA funds the CDCR to keep prison sexual [assault] claim numbers down," leading Plaintiff to suspect "cause for the lack of response to [his] PREA claim is if no investigation occurs the claim numbers stay down and the PREA funding flow continues." (*Id.* at 14-15.) Plaintiff asserts he "just recently received a CDCR memo stating this institution has been selected to be a test facility to see if housing inmates single cell will cut down violent incidences," and that despite his request to participate in the testing, his requests are being denied. (*Id.* at 15.) He prays the Court "can provide some relief and common [sense]." (*Id.*)

**C. Plaintiff's Eighth Amendment Threat to Safety Claim**

<u>CDCR is Entitled to Eleventh Amendment Immunity</u>

Plaintiff presents an Eighth Amendment threat to safety claim, presumably against all named defendants: CDCR, and Cantu, Gamboa, Sasselli, and Zoucha. As the Court previously admonished Plaintiff in its earlier screening orders (*see* Doc. 10 at 9-10 & Doc. 16 at 10), CDCR is entitled to Eleventh Amendment immunity in this section 1983 action. *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies," internal quotation & citations omitted), *cert. denied*, 538 U.S. 961 (2003). Because Plaintiff cannot pursue a claim for injunctive relief against CDCR, the undersigned will recommend CDCR be dismissed from this action.

Given the foregoing, the Court considers Plaintiff's Eighth Amendment threat to safety claim against Defendants Cantu, Gamboa, Sasselli, and Zoucha only.

<u>The Applicable Legal Standards</u>

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*,

511 U.S. 825, 832-33 (1994) & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Id.* (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis and citations omitted).

To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834.) The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Courts have not recognized "inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." *Gomez v. Whitney*, 757 F.2d 1005, 1006 (1985); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way or to

protect one citizen from another even when one citizen deprives the other of liberty of property").

Analysis

Although Plaintiff purports to state an Eighth Amendment threat to safety claim against Defendant Cantu, the factual allegations reveal that Cantu's involvement is limited to his failing to conduct, or failing to adequately conduct, a PREA investigation. No facts indicate Cantu failed to protect Plaintiff following Plaintiff's verbal and written reports to others at VSP concerning Soto's threats and behavior prior to Soto's assault of Plaintiff on July 3, 2024.

Thus, Plaintiff has alleged a standalone claim based upon a failure to investigate; however, there is no such claim available in a section 1983 action. *See Gomez*, 757 F.2d at 1006; *Gini*, 40 F.3d at 1045; *see also, e.g., Chen v. City & Cnty. of Honolulu*, No. 26-00054 JMS-WRP, 2026 WL 1734854, at *4 (D. Haw. June 16, 2026) ("Chen had no freestanding right to a particular standard of investigation," citing *Gomez*); *Lucas v. San Bernardino Cnty.*, No. 5:36-cv-01660-FLA-JDE, 2026 WL 1802424, at *3 (C.D. Cal. June 9, 2026) ("Plaintiff fails to state a cognizable civil rights claim based on the failure to investigate" because "there is no constitutional right to receive a satisfactory response to a citizen's complaint," citing *Gomez*); *Thompson v. City of Beaverton*, No. 3:26-cv-00744-AR, 2026 WL 1453471, at *3 (D. Ore. May 22, 2026) ("Courts consistently have determined that there is no constitutional right to an adequate investigation"); *Carpenter v. Aviles*, No. 1:26-cv-01707-SAB (PC), 2026 WL 395861, at *3 (E.D. Cal. Feb. 12, 2026) (same); *Hasha v. Gamboa*, No. 1:24-cv-00744-KES-SAB (PC), 2025 WL 1718056, at *2 (E.D. Cal. June 20, 2025) (dismissing action and stating in relevant part: "To the extent plaintiff characterizes the adverse action as Doe 1's failure to investigate her [PREA] allegation, that also fails to state a claim"); *Ellis v. Cnty. of Kern*, No. 1:22-cv-00436-ADA-BAM (PC), 2023 WL 7005188, at *5 (E.D. Cal. 2023) (stating no claim existed for failure to investigate prisoner's alleged sexual assault); *Page v. Stanley*, No. CV 11-2255 CAS (SS), 2013 WL 2456798, at *8-9 (C.D. Cal. June 5, 2013) (same).

Plaintiff argues that Cantu's inadequate PREA investigation meant there was "no report for the Classification Committee to consider as a case factor" moving forward, placing Plaintiff at substantial risk of future harm. He also argues these circumstances present an "exception" and

"would never happen out on the street with a real police investigator. And if it is not then it should be a civil rights violation." The future harm of which Plaintiff complains — the Classification Committee's inability to consider a PREA report — does not involve "another recognized constitutional right." *Gomez*, 757 F.2d 1006. This is so because an inmate has no constitutional right to a particular security classification or housing. *Rhodes v. Chapman*, 452 U.S. 337, 348-349 (1981); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). And, inadequate police investigations (or those "on the street with a real police investigator") also do not state a claim despite Plaintiff's belief that an inadequate investigation "should be a civil rights violation." *See Chen,* 2026 WL 1734854, at *4; *Lucas*, 2026 WL 18002424, at *3; *Thompson*, 2026 WL 1453471, at *3; *Page*, 2013 WL 2456798, at *8-9. In short, liberally construing the fourth amended complaint and accepting all facts as true, Plaintiff fails to allege a cognizable Eighth Amendment threat to safety claim, or any constitutional claim, against Defendant Cantu.

As concerns Defendants Gamboa, Sasselli, and Zoucha, Plaintiff alleges he reported Soto's attempts to form an in-cell Mexican gang to these individuals, indicating he and inmate Joseph Neale wanted Soto moved to another cell. He alleges that his correspondence, made to Gamboa, Sasselli, and Zoucha, was ignored or redirected and he never received a response. Therefore, liberally construing the fourth amended complaint and accepting all facts as true, the undersigned finds Plaintiff has plausibly alleged Eighth Amendment threat to safety/failure to protect claims against Defendants Gamboa, Sasselli, and Zoucha by alleging all three were aware of the substantial risk that Soto presented to Plaintiff as Soto's cellmate due to "[threats] & violence" and the formation "of a racially based gang within the cell" but where none of them took any action based upon that known risk. *Farmer*, 511 U.S. at 835, 837; *Frost*, 152 F.3d at 1128.

**D. The Requested Relief**

As noted above, Plaintiff seeks prospective relief in the form of the following: (1) a "competent adequate PREA investigation" concerning the July 3, 2024, altercation between he and inmate Soto, including the "use of polygraph to find statements reliable as contradictive statements can't both be true;" (2) that the results of the investigation be "made available and a

new RAP Classification hearing for single cell status happen with those case factors considered;" (3) permanent single cell status; and (4) "a temporary injunction of ruling single cell status [until] the PREA investigation" concerning the prior July 2024 incident is conducted and considered by RAP Classification. (Doc. 21 at 6.)

Requests for prospective relief are further limited by the Prison Litigation Reform Act (PLRA), which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(2). In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." *Id*. Moreover, where "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984)).

The undersigned preliminarily has doubts as to whether Plaintiff's first and fourth bases for injunctive relief are "narrowly drawn," "extend[] no further than necessary to correct" the federal violation alleged, and are "the least intrusive means necessary" to correct the harm. 18 U.S.C. § 3626. Both the first and fourth bases involve a future PREA investigation; however, as discussed above, Plaintiff cannot state a claim based upon an inadequate PREA investigation. *Gomez*, 757 F.2d at 1006. Nevertheless, liberally construing the complaint and despite its doubts concerning the relief sought, the Court finds it appropriate for this action to proceed past screening as limited below.

**E. Screening Summary**

In sum, the undersigned finds Plaintiff has stated plausible Eighth Amendment threat to safety claims against Defendants Gamboa, Sasselli, and Zoucha, but fails to allege any other cognizable claim against any other named defendant. Therefore, the undersigned will recommend

this action proceed on Plaintiff's cognizable claims against Gamboa, Sasselli, and Zoucha only. Further, the undersigned will recommend Defendants CDCR and Cantu be dismissed from the action because Plaintiff cannot state claims against them and granting further leave to amend would be futile for the reasons stated above and because Plaintiff has not remedied the associated pleading deficiencies despite the Court's noting the deficiencies in earlier screening orders. *See Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013)

Additionally, the Court will direct the Clerk of the Court to modify the docket for this action to substitute individuals named in a previous complaint for those named in the fourth amended complaint.

## IV. ORDER AND RECOMMENDATION

Accordingly, the Court **HEREBY ORDERS** the Clerk of the Court to modify the docket to terminate J. Zamora, C. Martincek, M. Brown, and H. Moseley and to substitute in their place the following individuals: V. Cantu, Sergeant Gamboa, L. Sasselli, and C. Zoucha.

Further, for the reasons explained above, the undersigned **HEREBY RECOMMENDS** as follows:

1. That this action **PROCEED** *only* on Plaintiff's Eighth Amendment threat to safety claims against Defendants Gamboa, Sasselli, and Zoucha, and that any remaining claims be dismissed; and
2. That Defendants CDCR and V. Cantu be **DISMISSED** from this action as Plaintiff fails to state a claim upon which relief can be granted against CDCR or Cantu.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **14 days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections, if any, shall not exceed 15 pages. Any pages filed above the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections. Any failure by a party to file objections within the specified time may result in the

waiver of the right to challenge the factual findings herein on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 10, 2026**

UNITED STATES MAGISTRATE JUDGE